# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUSAN J. KRUEGER, ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GORDON H. MANSFIELD, ) <br> Acting Secretary of Veterans Affairs ) <br>     Defendant. ) <br> _____ ) | Judge Blanche M. Manning <br><br> Case No. 06 C 3322 |

## MEMORANDUM AND ORDER

Susan Krueger filed suit against the Secretary of the Department of Veterans Affairs alleging various federal and state law claims related to her April 2006 involuntary commitment at the Department's Edward Hines Jr. Hospital ("Hines"). After the government's motion to dismiss, Krueger's federal Privacy Act claim survived.[1] The government has moved for summary judgment as to this claim, which, for the reasons stated below, the court grants.

**I.    Current Posture of Case and Plaintiff's Pro Se Status**

After the parties had briefed and submitted their papers on the government's motion for summary judgment, the court struck those papers because the government failed to authenticate the documents upon which it was relying for summary judgment. The government subsequently filed affidavits authenticating the documents, and sought to reinstate its original motion for summary judgment. The government's motion to reinstate was granted and the court permitted Krueger to revise her responses to the motion for summary judgment and the government's statement of fact, which she did. While the government notes that Krueger's response brief on

---

[1] The court offered Krueger the opportunity to exhaust her administrative remedies with respect to any tort claims she might have under the Federal Tort Claims Act, 28 U.S.C. § 1364(b), but Krueger declined the offer and elected to pursue only the Privacy Act claim.

the CM/ECF docket appears to be cut off at only 13 pages, it received a 20-page response brief (not including the certificate of service) directly from Krueger, as did this court. The court will therefore consider Krueger's entire 20-page response and directs the clerk to place this document on the docket. The government then filed a new reply brief. The court now addresses the fully briefed motion[2], but first comments on Krueger's pro se status.

Krueger requested appointment of counsel at the beginning of the case; however, the court denied it based on its careful consideration under the factors articulated in *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995); Dkt. #6-1. The court notes that, in any event, Krueger did not appear to be indigent at the time the court considered her motion as she advised the court that her monthly income was over $4,000. Dkt. ## 4-1 and 5-1, Krueger's Motion for Leave to Proceed In Forma Pauperis and Motion for Appointment of Counsel. Krueger has proceeded in a competent fashion throughout this case, including capably defending a motion to dismiss filed by the government as well as affirmatively bringing a motion to compel discovery she sought from the government. The court urged the parties to resolve the motion to compel on their own, which they apparently were able to do as there were no subsequent requests by Krueger to renew the motion.

Pursuant to Rule 56.2, the government provided the required notice to Ms. Krueger regarding her pro se summary judgment filings. Dkt. #52-1. Nevertheless, the government notes

---

[2]By fully briefed motion, the court means the government's opening brief [51-1], Krueger's amended response to the government's statement of fact and attached exhibits [61-1] and affidavits [62-1 and 63-1] Krueger's amended response to the government's opening brief [64-1], the government's second reply in support of its motion for summary judgment [65-1]. The court also considered the affidavits attached to the government's motion to reinstate its motion for summary judgment [57-1].

in its reply that Krueger has failed to properly respond to the government's statement of material facts. For example, Krueger denied many of the statements of fact largely based on her own view of events, but fails to support these denials with any citation to the record, contrary to Local Rule 56.1(b)(3(B), which requires that "in the case of any disagreement [by the respondent], specific references to the affidavits, parts of the record, and other supporting materials relied upon" must be made. Moreover, she did not file her own statement of additional facts pursuant to Local Rule 56.1(b)(3)(c).

Krueger's failure to comply with the Local Rules is not excused by her pro se status. *See Stevens v. Navistar Int'l Transp. Corp.*, 244 F. Supp. 2d 906, 910 (N.D. Ill. 2002) (holding that even though the court reads a pro se plaintiffs pleadings liberally, pro se status does not excuse a failure to comply with Local Rule 56.1). Nevertheless, given Krueger's pro se status, the court will construe her filings liberally. The court will consider the factual assertions she makes in her response to the defendants' statement of facts but only to the extent that the plaintiff could properly testify about the matters asserted. *See* Fed R. Evid. 602 (a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter).

In addition, construing Krueger's responses liberally, the court has attempted to include all of the relevant facts that are properly supported and note relevant disagreements. To the extent Krueger appears to deny or contradict immaterial facts, the court disregards those denials as they do not affect the outcome of the case. As such, the court addresses the government's motion.

## II. Statement of Facts

Krueger was employed as a systems and procedures analyst at Hines' service and distribution center from January 2002 until her retirement in September 2006.[3] On April 28, 2005, Krueger and Hines human resources employee, Victoria Jones-Khalil, corresponded via e-mail regarding Krueger's receipt on April 27, 2005, of a written reprimand from supervisor Teresita Larican. The reprimand concerned Krueger's unauthorized use of her government travel card to obtain a $350.00 cash advance. The reprimand explained that if Krueger believed it was unjustified, she could appeal pursuant to her union agreement. It also stated that any appeal had to be filed through Krueger's supervisor within 15 days of receiving the reprimand and that Krueger could contact Jones-Khalil for assistance in that process.

In the e-mail exchange between Krueger and Jones-Khalil, Jones-Khalil stated that Krueger was "obligated to go to the union first." After several e-mail exchanges with Krueger on the grievance issue and Krueger's indication that she wanted to appeal the letter of reprimand to personnel at the human resources department, Jones-Khalil faxed a copy of the reprimand letter to Krueger's union representative, Brenda Woodall. Jones-Khalil requested that Woodall contact Krueger as soon as possible about the proper grievance process. Krueger contends that she was not required to seek union help, did not want this help and, in any event, the union did not offer to represent her. Plaintiff Exh. B at pages 12-13.

On April 4, 2006, supervisor Annette Crayton issued Krueger a letter of counseling admonishing Krueger for yelling and being generally disrespectful towards Crayton when she

---

[3]Krueger apparently contests whether her retirement was voluntary, but that fact is not material to the dispute presently before the court.

confronted Krueger about her poor performance. In that letter, Crayton reminded Krueger about the Employee Assistance Program ("EAP"), a counseling program maintained by federal agencies. Krueger contends that she never yelled at or was disrespectful towards Crayton. Krueger also asserts that the letter from Crayton was about Krueger being three minutes late to work, not poor performance.

On April 7, 2006, Krueger attended a counseling session with EAP social worker, Carlos Anchondo. According to Achondo's notes from that meeting, Krueger reported feeling stressed and anxious about her work, and further stated that she coped by drinking and exercising, and had thoughts of hurting others. Anchondo noted, however, that she was "without a plan." Krueger denies that she had a counseling session with Anchondo on April 7, 2006, and in support, compares her timecard from April 7, 2006, which contains no special notations, with one from April 13, 2006, which indicates an "authorized absence" for a counseling session she had with Achondo that day. The court notes that in contradiction to Krueger's assertion that she did not have a counseling session with Achondo on April 7, 2006, her own set of exhibits which were attached to her original responses to the government's statement of facts contained the "Counseling and Contact Report" from the April 7, 2006, visit. *See* Plaintiff's original Exhibit A at page 21.

On April 13, 2006, Krueger attended another EAP counseling session with Anchondo. The parties' version of events as to this counseling session differs. Anchondo's notes from that session indicate that Krueger quickly became insistent that she needed to get out of her current job and when asked how she was coping stated, "I'm homicidal" and that she "felt angry enough to hurt someone." Anchondo noted during the meeting that Krueger became increasingly upset,

tearful and then much quieter and that when asked about her feelings, she twice repeated that she was homicidal and that "maybe" she had suicidal ideations.

According to Anchondo, he then sought assistance from EAP employees Maryanne Blacconiere and Michael Rauen. Blacconiere, a social worker, assisted Achondo in calming Krueger down and convinced her to report to the Hines emergency room. Hines police officers responded to a call made by the EAP office and escorted Krueger, with her agreement, to the emergency room.

In Krueger's response, she disagrees with various parts of the above statements of fact, but does not refer to any portion of the record in support. According to Krueger, she never said she was homicidal or felt angry enough to hurt anyone and she never discussed "repeated homicidal comments" with Anchondo. She also states that she did not feel comfortable with Anchondo because he acted bizarrely by abruptly leaving the room when they were talking. She refers to Blacconiere as a "disheveled" looking woman who "interrupted" the counseling session and denies that Blaconniere helped her calm down. Krueger contends that she has never seen Rauen and that when she left Achondo's office, she was surprised to see a police officer there but was under the "erroneous impression" that he would treat her fairly. Krueger also contends that she felt forced to go to the Hines emergency room.

While in the Hines emergency room, Krueger reported to the psychiatrist, Dr. Christopher Adams, a history of alcohol abuse since 1988. She also refused to let physicians contact her family or supervisor for additional information regarding her medical history. Although Krueger denies that she told anyone she had a history of alcohol abuse, the psychiatric evaluation that was done at Hines states that "the pt admits to drinking regularly since 1988." *See* Government Exh.

E at 8. The emergency room physicians, Dr. Adams and Dr. K. Tummula, concluded that Krueger needed to be involuntarily committed for evaluation at a private hospital. A social worker at Hines, Deborah Strzok, contacted Krueger's insurer and obtained a list of providers, which included MacNeal Hospital in Berwyn. Krueger was later transported in an ambulance to MacNeal Hospital on that same day and was discharged the following week on April 20, 2006.

In response to several of the government's statements relating the above facts, Krueger discusses various other topics, including the propriety of her involuntary commitment, alleged violations of Illinois law, and apparent billing issues between her insurer and MacNeal. However, as these arguments are not relevant to her Privacy Act claim, the court will not further recount them here.

Krueger returned to work at Hines in mid-June 2006 but was denied access to her workplace because she did not have the appropriate documentation from a mental health provider indicating that she was capable of returning to work. Krueger states that this was the first time that she was informed that she needed such medical documentation.

While the parties debate whether it was two days or a few weeks later, Krueger returned to work soon thereafter when she obtained a proper note from her physician. Krueger initiated this pro se lawsuit in June 2006 and then filed a second amended complaint in November 2006 raising various other claims in addition to her claim under the Privacy Act of 1974, 5 U.S.C. § 552a.

In March 2007, this court dismissed three of Krueger's four claims as alleged in her second amended complaint with only the Privacy Act surviving. Dkt. #30-1. Nevertheless, Krueger's summary judgment papers appear to contain allegations with respect to claims that

were not previously alleged or that already have been disposed of. To the extent that Krueger attempts to raise new claims at this stage of the litigation, such attempt is improper and the court will not consider them. Only the Privacy Act claims are properly at issue at this point.

## III. Krueger's Allegations

Based on a liberal reading of all of the issues raised in the summary judgment papers, the court construes the following allegations as implicating the Privacy Act:[4]

- when Jones-Khalil, without Krueger's permission, sent a fax to Brenda Woodall, the union representative, regarding Krueger's supposed desire to file a grievance concerning the April 2005 letter of reprimand;

- when her supervisor, Annette Crayton, issued Krueger a letter of counseling after Krueger purportedly yelled at Crayton when she attempted to discuss performance issues with Krueger;

- when, on April 13, 2006, EAP counselor Achondo advised other Hines' employees that Krueger had a history of alcohol abuse and had expressed

---

[4]Contrary to Krueger's arguments, the court does not construe the following allegations to raise Privacy Act concerns: when Krueger was disciplined by her supervisor, Teresita Larican, and was allegedly misinformed by human resources employee, Jones-Khalil, about how to file a grievance regarding this discipline with the union; that Krueger should have been allowed to pursue this grievance without union assistance; when Hines VA psychiatrist, Dr. Adams, completed an involuntary psychiatric admission and "wouldn't allow plaintiff to leave so that services in [a] least restrictive environment could be obtained"; when additional Hines employees completed a petition for Krueger's involuntary psychiatric admission because they did not call her next of kin or permit her to obtain psychiatric services on her own (according to Krueger, the defendant violated the Illinois Health Care Surrogate Act by failing to inform her relatives and violated the Illinois Mental Health and Developmental Disabilities Code when it did not allow her to obtain her own services); that the government improperly forced her to be involuntarily committed or violated a state statute in doing so; that the government committed health care fraud by sending her to MacNeal Hospital; and that she was discriminated against and was being forced to retire when Hines took away her payroll responsibilities

- homicidal ideations about co-workers during a counseling session;
- when Dr. Adams, the Hines emergency room psychiatrist, forwarded personal medical information about Krueger to MacNeal Hospital, where she was involuntarily committed for a week;
- when, on April 13, 2006, the government disclosed Krueger's personal information to the ambulance service that transported her to MacNeal Hospital, such as her name, social security number, and home address;
- when, in June 2006, Krueger was denied access to her office as she first tried to return to work after being out since April 13, 2006, because she did not provide a doctor's note stating that she was no longer a danger to herself or other employees;[5]
- when, on August 23, 2006, Hines VA human resources employee David Pollard informed the U.S. Department of Labor's Office of Workers' Compensation Programs (OWCP) that Krueger was scheduled to retire seven days later on September 1, 2006, as Pollard was attempting to respond to OWCP's request for information regarding the workers' compensation claim that Krueger had filed;
- when the government did not allow her to "amend" the letter of reprimand she received from Teresita Larican on April 27, 2005;
- when the government failed to allow her to "amend" her records to reflect

---

[5]According to Krueger's response to the relevant statement of fact, that she eventually was allowed to return to work shows that Achondo's "slanderous" accusation about her having homicidal ideations was unsupported.

that her mental and emotional condition was, contrary to the statements by Hines personnel, not so unstable as to constitute an "emergency" on April 13, 2006, as established by the fact that she was held in the Hines emergency room for eight hours before she was transported to MacNeal;

- that she was never notified of the disclosures that were made as required by the Privacy Act.

The court is certainly sympathetic to Krueger's concerns that certain personal information about her was disclosed to some people. However, the Privacy Act covers only very specific types of disclosures which, for the reasons discussed in the next section, are not implicated here. Thus, the court cannot offer Krueger the relief she seeks.

## IV. Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the movant's asserted facts. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

V.   **Analysis**

The Privacy Act restricts the disclosure of certain information by providing that:

> [n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, . . .[with certain enumerated exceptions].[6]

5 U.S.C. § 552a. If an agency, acting intentionally or willfully, violates this provision "in such a way as to have an adverse effect on an individual," the individual may file a civil action for damages. 5 U.S.C. § 552a(g)(1)(D). Both "actual damages sustained by the individual and statutory minimum damages of $1,000 are available, along with attorney's fees." 5 U.S.C. § 552a(g)(4).

   A.   Disclosure Under the Privacy Act

"The key elements of a cause of action under the Privacy Act for damages for disclosure are: (1) agency disclosure (by any means of communication); (2) to an individual or another agency; (3) of a 'record' contained in a 'system of records'; (4) which is unauthorized by the individual; (5) which is not within an exception; (6) an adverse effect on the individual, which contains two components (i) an adverse standing component and (ii) a causal nexus between the disclosure and the adverse effect; and (7) that the agency action be in a manner which was 'intentional' or 'willful.'" *Carlson v. General Services Admin.*, No. 04 C 7937, 2006 WL 3409150, at *3 (N.D. Ill. Nov. 21, 2006)(*citing* 5 U.S.C. § 552a; *Quinn v. Stone*, 978 F.2d 126, 131 (3d Cir. 1992)).

---

[6]The relevant exceptions at issue here are the "need to know" exception," the "compelling circumstances" exception, and the "routine use" exceptions. However, despite the government's reliance on these exceptions, for reasons discussed later, the court does not delve into these exceptions.

1.  Medical information

While Krueger fails to specifically identify the exact medical information that she says is protected by the Privacy Act, it appears that she takes issue with the fact that Achondo informed other counselors and the Hines VA emergency room doctors that she was homicidal when she insists she was not and never indicated that she was. Krueger also asserts that Achondo should not have informed the emergency room doctors that she had a history of alcohol abuse and that the emergency room doctors, in turn, should not have disclosed her history of alcohol abuse to MacNeal Hospital, where she was transported for her week-long involuntary commitment.

The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records. . . ." 5 U.S.C. § 552a(b). The government contends that Krueger cannot demonstrate that it disclosed a "record" from a "system of records."[7] The term "record" is defined as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a

---

[7]The government spends a good portion of its briefs arguing that any disclosure of Krueger's purported homicidal ideations and alcohol abuse were pursuant to the "need to know," "routine use" and/or "compelling circumstances" exceptions to the Privacy Act's prohibition against disclosure of "records which are contained within a system of records." Under all of the these exceptions, the government asserts that because of the danger that Krueger posed to others, disclosure of any protected information was necessary. Also, based again on Krueger's purported homicidal ideations, the government argues that Krueger cannot show that it acted willfully or intentionally in disclosing any protected information–another element of a Privacy Act claim. However, because Krueger challenges the government's position that she stated to the EAP counselor that she was homicidal, a genuine issue of material fact exists as to whether she indeed said that she was homicidal. Given the existence of this genuine issue of material fact, the court cannot grant summary judgment on the grounds either that the disclosures fall under the articulated exceptions or that the government's disclosures were not willful and intentional.

finger or voice print or a photograph." 5 U.S.C. § 552a(a)(4). Further, the term "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

"[T]he legislative history of the Privacy Act, . . . indicates that Congress was concerned predominantly with the increasing use of computers and sophisticated information systems and the potential abuse of such technology." *Thomas v. United States Department of Energy*, 719 F.2d 342, 345 (10th Cir. 1983)()(citation omitted). According to one court, "'the only disclosure actionable under 552a(b) is one resulting from a retrieval of the information initially and directly from the record contained in the system of records.'" *Doe v. Department of Veterans Affairs*, 519 F.3d 456, 461 (8th Cir. 2008)(citation omitted). As noted by another court recently:

> The key limitation in the Act's definition of "system of records" is its use of "retrieved." "'Retrieval capability is not sufficient to create a system of records'; the agency must in practice retrieve information by personal identifier." "Given the statutory language 'is retrieved,' the agency's actual retrieval practice and policies are what matter."

*McCready v. Nicholson*, 509 F.Supp.2d 22, 28 n.6 (D.D.C. 2007)(internal citations omitted)

While medical records are included in the definition of "records," Krueger points to no evidence demonstrating that the information regarding her purported homicidal ideations or her history of alcohol abuse was a "record" within a "system of records." Indeed, the evidence demonstrates that Achondo obtained the information as to Krueger's homicidal ideations and alcohol abuse not from any "records," but from his own personal observation. Further, the only evidence in the record establishes that Dr. Adams, the emergency room psychiatrist, obtained his information from Achondo or personal discussions with Krueger. However, "[s]ection 552a(b)

does not prohibit disclosure of information independently acquired." *Doe v. Department of Veterans Affairs of U.S.*, 519 F.3d 456 (8th Cir. 2008)(affirming grant of summary judgment to Department of Veterans' Affairs where doctor attested that his disclosure to union representative of plaintiff's HIV-positive status and marijuana use was from memory and not directly from plaintiff's medical file)(citation omitted). The record is devoid of any evidence that the information obtained by the other counselors, Dr. Adams, or MacNeal Hospital, was from a "system of records" as that term is defined by the Privacy Act. *Id*. ("The statutory definition of record emphasizes the agency's maintenance of the record; the definition for system of records focuses on the agency's control over the records and the ability to retrieve the information by some type of identifying particular that is assigned to an individual.")(citation omitted).

Because Krueger fails to cite to the disclosure of a "record which is contained in a system of records," as provided in the statute, the court grants the government's motion for summary judgment as to the medical information allegedly disclosed by Achondo and the emergency room doctors. Given the court's conclusion on the disclosure of the medical information, it need not address the government's other arguments that Krueger has failed to establish either that the disclosures were not made pursuant to an exception or that the disclosures were willful or intentional.

2. Information Provided to Ambulance Service

Krueger next argues that the disclosure of information (i.e., name, address, social security number) to the ambulance service which transported her from the Hines emergency room to MacNeal Hospital also constituted a violation of the Privacy Act. The ambulance report that Krueger attaches to her responses to the government's statement of facts indicates that

"[patient's] history [was] obtained from chart." Plaintiff Exh. B at p. 9. The court understands the reference to "chart" as being to Krueger's emergency room chart from her visit to Hines. The ambulance report, and another attached as page 10 to Krueger's exhibit B, contain such information as Krueger's home address, her telephone number, birth date and social security number.

As with the other medical information previously discussed, Krueger fails to demonstrate that the information received by the ambulance company was a "record which is contained in a system of records." Indeed, there is no evidence in the record establishing the source of the information in the chart, which could have been obtained from Krueger herself, for example. *Thomas,* 719 F.2d at 345 ("[T]he legislative history of the Privacy Act, . . . indicates that Congress was concerned predominantly with the increasing use of computers and sophisticated information systems and the potential abuse of such technology.")(citation omitted). *See also Doe v. Department of Veterans Affairs*, 519 F.3d at 461 (reiterating that "'the only disclosure actionable under 552a(b) is one resulting from a retrieval of the information initially and directly from the record contained in the system of records.'")(citation omitted).

If Krueger did provide the information that was contained in her emergency room chart, then there would be no violation of the Privacy Act upon its disclosure. Because Krueger fails to point to evidence that the information was not obtained from her, or some other source that was not a "record which is contained within a system of records," the government's motion for summary judgment as to this disclosure is granted.

    3.    Letter of Reprimand

Krueger also asserts that the government violated the Privacy Act when Jones-Khalil

faxed the April 2005 letter of reprimand to Krueger's collective bargaining unit representative. However, again, Krueger fails to demonstrate that the letter constituted a "record which is contained in a system of records." Indeed, it appears from the e-mail exchange between Krueger and Khalil-Jones on this issue that Khalil-Jones was present when Larican gave Krueger the letter. Government Exh. D at page 8 (in an e-mail message to Jones-Khalil, Krueger states "[a]ccording to the letter that you and Ms. Larican gave me yesterday."). Thus, if anything, the record reflects that the source of the record was either Larican or Krueger herself, and not a "record which is contained in a system of records."

Moreover, even assuming that the letter constituted a "record which is contained in a system of records," the court agrees with the government that Krueger has failed to point to any evidence that she suffered an "adverse effect," another prong of a Privacy Act claim, as a result of the allegedly improper disclosure.[8] The government's motion for summary judgment on this issue is granted.

4. Physician's Note Requested by Pollard

Krueger additionally contends in her response brief that David Pollard of the human resources staff violated the Privacy Act when, upon her return to work, he required Krueger to

---

[8]The government also argues that Krueger has pointed to no evidence that faxing the letter to the union representative was willful and intentional as required by the Act. However, the court disagrees given that the e-mail exchanges between Krueger and Jones-Khalil indicate that Krueger told Jones-Khalil that she did not want to go through the union. While the government's position may be that Jones-Khalil was acting in Krueger's best interest and was merely attempting to preserve Krueger's right to appeal the letter of reprimand, Krueger's statements to Jones-Khalil that she apparently did not want to appeal to the union establishes a genuine issue of material fact as to whether the subsequent transmission of the letter to the union representative was willful and intentional. This genuine issue of material fact, however, does not prevent the court from granting summary judgment to the government on the other grounds listed in this section.

obtain a letter from a physician stating that she was not a danger to herself or her coworkers. It is not entirely clear what the substance of Krueger's complaint is here, but, based on Krueger's affidavit, it appears that she believes that Pollard made "slanderous" statements about her to other staff members, presumably about the reason for her absence. Krueger, however, fails to support this assertion with any record evidence that Pollard disseminated any protected information about her or that he obtained the information from a "record which is contained in a system of records." Moreover, she has failed to point to evidence of an adverse effect as a result of the purported slanderous disclosures.

Krueger also could be arguing that supposedly protected information must have been communicated *to* Pollard in order for him to require her to submit a physician's note that she was no longer a danger to herself or her coworkers. But, Krueger fails to point to any evidence that Pollard received the information as a "record which is contained in a system of records." Further, she fails to set forth any evidence of an adverse effect as a result of the supposed disclosure. Accordingly, the government's motion for summary judgment as to the physician's note required by Pollard is granted.

5. Disclosure of Retirement Date

In her response to the government's last statement of material fact, Krueger also appears to assert that Pollard violated her Privacy Act rights when he disclosed on August 25, 2006, to the Department of Labor, Office of Workers' Compensation Programs, that Krueger's retirement date was September 1, 2006. It appears from the document provided by Krueger that she filed a workers' compensation claim for the events of April 13, 2006, when she was transferred to the Hines emergency room and was then involuntarily committed. *See* Government Exh. D at 13.

Krueger, however, has pointed to no evidence that Pollard acted willfully or intentionally when he released information based on an apparent inquiry from the Department of Labor that was initiated by Krueger's workers' compensation claim.  Nor does Krueger point to any adverse effect which resulted from the disclosure.  Both of these are necessary elements of a Privacy Act claim, as discussed above.

In any event, Krueger's signed workers' compensation application expressly authorizes "any physician or hospital (or any other person, institution, corporation, or government agency) to furnish any desired information to the U.S. Department of Labor, Office of Workers' Compensation Programs . . . ."  *See id.*

For these reasons, the government's motion for summary judgment is granted as to the allegations of Pollard's disclosure to the Department of Labor.

B. Amendments Under the Privacy Act

Krueger also asserts in her response brief that the government committed a Privacy Act violation by not allowing her to amend certain records.  Specifically, she contends that she should have been allowed to amend her mental health records to indicate that her mental state on April 13, 2006, was not an emergency.  She also seeks to "amend" the letter of reprimand that she received in April 2005.  The relevant provisions of the Privacy Act state that the agency shall:

> permit the individual to request amendment of a record pertaining to him and--
> (A) not later than 10 days (excluding Saturdays, Sundays, and legal public holidays) after the date of receipt of such request, acknowledge in writing such receipt; and
> (B) promptly, either--
>> (i) make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or

> (ii) inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official; . . . .

5 U.S.C. § 552a(d)(2). Krueger, however, fails to point to any evidence that she requested the amendment of any of the records she discusses. Accordingly, the government's motion for summary judgment on her allegation of a Privacy Act violation for failure to amend is granted.

C. Notification of Disclosure

In her response brief, for the first time, Krueger argues that the government should have notified her of any disclosures it made, citing 5 U.S.C. § 552a(e)(3), which states that:

> Each agency that maintains a system of records shall--
> . . .
> (3) inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual--
> (A) the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;
> (B) the principal purpose or purposes for which the information is intended to be used;
> (C) the routine uses which may be made of the information, as published pursuant to paragraph (4)(D) of this subsection; and
> (D) the effects on him, if any, of not providing all or any part of the requested information;
> . . . .

As an initial matter, Krueger has previously failed to articulate any Privacy Act claim regarding failure to provide notification in any prior filing before this court. Accordingly, she has forfeited such an argument. Moreover, Krueger, fails to indicate how the section she cites is relevant to this case. Finally, and most importantly, to the extent that notification may have been required, Krueger has failed to establish that the alleged disclosures were within the purview of

the Act, and therefore, that notification was even necessary. Accordingly, the government's motion for summary judgment is granted as to this claim.

## VI. Conclusion

The court appreciates that Krueger fervently believes that she was wronged by the government. Nevertheless, for the above reasons, the court must conclude on the evidence before it that government's motion for summary judgment [#51-1] should be granted. The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket.

**ENTER:**

**DATE:** May 30, 2008

*Blanche M. Manning*
**Blanche M. Manning**
**United States District Judge**